IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DEANNA McATEE, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES SECRET SERVICE, <br><br> Defendant. | CV 15–84–M–DWM <br><br><br> ORDER |

**INTRODUCTION**

Plaintiff Deanna McAtee brings this action against the United States Secret Service, a component of the United States Department of Homeland Security, alleging noncompliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. McAtee seeks a declaration that the Secret Service violated FOIA by failing to provide her with timely and full responses to her FOIA requests, an order requiring the Secret Service to immediately and fully provide her with all records relating to its investigation of her, and an award of costs and attorneys' fees. Both parties seek summary judgment. (Docs. 19, 23.) For the reasons stated

below, the Secret Service's motion is granted in part, McAtee's motion is denied in part, and the parties are ordered to make supplemental filings.

**BACKGROUND**

On May 2, 2012, the United States filed an indictment in this Court charging McAtee with bank and wire fraud related to real estate transactions involving Whitefish Credit Union and other individuals. (Def.'s Statement of Disputed Facts, Doc. 28 at 3–4 (referencing CR 12–22–M–DLC, Doc. 1)).) The indictment was dismissed without prejudice on September 24, 2012. (Doc. 28 at 5 (referencing CR 12–22–M–DLC, Doc. 15)).)

On August 8, 2013, the Secret Service received a FOIA request from McAtee requesting her "complete criminal file in it's [sic] entirety including all investigative reports, wire taps, sworn statements, written statements, interviews and field notes of investigating officers." (Pl.'s Statement of Disputed Facts, Doc. 30 at 5; Doc. 16-1.) The Secret Service responded on September 7, 2013, and informed McAtee that the request could not be completed as she had not provided certification of her identity. (Docs. 30 at ¶ 2; 16-2.) The case was administratively closed on November 2, 2013. (Doc. 30 at ¶ 2; Magaw Decl., Doc. 16 at ¶ 6.)

On April 7, 2014, the Secret Service received a letter from McAtee dated

February 25, 2014, resubmitting her FOIA request. (Docs. 30 at ¶ 3; 16-3.) The Secret Service acknowledged the request on April 15, 2014, advising that there may be a delay in processing the request "[d]ue to the increasing number of FOIA/PA requests received by [the] office." (Docs. 28 at ¶ 10; 16-4.) By letter dated May 8, 2014, the Secret Service notified McAtee that it had located the documents and that it was reviewing them for "releasability." (Docs. 28 at ¶ 11; 16-5.) By letter dated September 17, 2014, the Secret Service notified McAtee that it had erroneously mailed previous letters to her physical rather than mailing address and enclosed earlier letters that had not reached her. (Docs. 28 at ¶ 12; 8-1 at 12.) On January 7, 2015, after an unsuccessful attempt to e-mail a request, counsel representing McAtee successfully faxed an additional request for records to the Secret Service on McAtee's behalf. (Docs. 30 at ¶ 4; 8-1 at 13.)

On March 11 and April 13, 2015, the Secret Service sent McAtee responses to her requests, which included a DVD interview of McAtee, documents released in full, documents redacted per various exemptions, and a notification of documents withheld in full per various exemptions. (Docs. 28 at ¶ 14; 30 at ¶¶ 8–9; 16-7; 16-8.) McAtee appealed both releases. (Docs. 30 at ¶ 10; 16-9; 16-10.) McAtee commenced this action on July 8, 2015. (Doc. 1.) On September 4, 2015, the Secret Service responded to McAtee's appeals, upholding its earlier response

and releasing additional documents responsive to her request. (Docs. 28 at ¶ 10; 16-11.)

Ultimately, the Secret Service released its investigative file on McAtee, which included a video with redactions, 450 pages released in full, 41 pages withheld in full, and 163 pages released with redactions.[1] During its review, the Secret Service also referred pages from the file to the Executive Office of the United States Attorney's Office because information on the pages originated within a United States Attorney's Office. (Docs. 30 at ¶ 13; 16-12; 16-13.) The Executive Office completed its review on March 3, 2016, and its response included 3 pages released in full and 29 pages withheld in full. (Docs. 32-1; 33; 33-1.)

McAtee claims the Secret Service conducted an unreasonable search and that it improperly withheld, redacted, and referred documents. The Secret Service claims it properly withheld, redacted, and referred the documents. To support its response to McAtee's request, the Secret Service has filed a Declaration of Craig D. Magaw, FOIA appeals authority for the Secret Service (Doc. 16), a *Vaughn*

---

[1] According to the Secret Service, it processed a total of 663 pages made up of 467 pages released in full, 40 pages withheld in full, and 156 pages released with redactions. (Docs. 30 at ¶¶ 12, 15; 16 at ¶¶ 29–31.) However, that breakdown does not appear to correspond with the Bates numbered documents filed by the Secret Service. (*See generally* Doc. 29-1.)

Index[2] (Doc. 16-14), and 268 Bates Numbered Redacted Pages, (Doc. 29-1).

## STANDARD

Summary judgment is proper where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties agree this case is properly decided on summary judgment, as is often appropriate in FOIA actions where facts are rarely in dispute. *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996).

## DISCUSSION

To determine which party is entitled to summary judgment, courts employ a three-step inquiry. *Am. Civil Liberties Union of N. Cal. v. FBI*, __ F. Supp. 3d __, 2015 WL 7251928, at *2 (N.D. Cal. Nov. 17, 2015). The first step is to determine whether the agency met its burden of showing that it fully discharged its FOIA obligations. *Id.* The second step is to determine whether the agency met its burden of demonstrating that the undisclosed information falls within one of the nine FOIA exemptions. *Id.* The final step is to determine whether the agency met its burden of establishing that "all reasonably segregable portions of a document have been segregated and disclosed." *Id.* (quoting *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008)). These steps are addressed in turn

---

[2] *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

below.

I.      **FOIA Obligations**

To meet its burden, the agency must "demonstrate that it has conducted a 'search reasonably calculated to uncover all relevant documents.'" *Zemansky v. U.S. Envtl. Prot. Agency*, 767 F.2d 569, 571 (9th Cir. 1985) (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  The issue is whether the search procedures and the agency's response were adequate, which "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Id.* "In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Id.*

   A.      **Search Conducted**

McAtee claims the Secret Service did not perform a reasonable search because the search and processing it performed was dilatory and in violation of the 20-day deadline prescribed in 5 U.S.C. § 552(a)(6)(A)(i).  The Secret Service concedes that it "was not able to complete its review and analyze the results for proper exemptions within the statutory time period," (Doc. 31 at 2), but insists that the delay does not entitle McAtee to judgment in her favor.  The Secret Service is correct.  An untimely response is actionable in court but only in so far as the requester seeks the court's assistance in ordering the agency to complete its

response or the requester claims that the agency has a pattern and practice of unreasonable delay in responding to FOIA requests. *See* 5 U.S.C. § 552(a)(4)(B) ("On complaint, the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."); *Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, 1188 (N.D. Cal. 1998) ("[T]his Court has jurisdiction over Gilmore's claim that the [agency] has a pattern or practice of untimely responses to FOIA requests."). If the agency has completed its review and responded, "the only issue for the Court to consider . . . is whether the [agency's] response complies with its obligations under FOIA." *Hainey v. U.S. Dep't of the Interior*, 925 F. Supp. 2d 34, 42 (D.C. Cir. 2013) (citing *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) ("We are not authorized to make advisory findings of legal significance on the character of the agency conduct . . . . [I]if we are convinced that [the agencies] have, however belatedly, released all nonexempt material, we have no further judicial function to perform under the FOIA.")). Because McAtee does not dispute that she has received a final response to her request and she does not allege a pattern or practice of untimely responses, her timeliness claim is moot. *See Carter v. Veterans Admin.*, 780 F.2d 1479, 1481 (9th Cir. 1986) ("[S]ince Carter's complaint sought injunctive relief directing the [agency] to provide the

documents he requested, it was mooted when the [agency] voluntarily mailed copies of the regulations to Carter."). Because McAtee raises no other challenges to the search and there are no indications in the record of agency bad faith, the search conducted by the Secret Service was reasonable.

### B. Pages Referred to Other Agency

McAtee claims the Secret Service's referral of 31 pages to the Executive Office of the United States Attorney's Office constitutes an improper withholding of documents. FOIA contemplates an agency's consultation "with another agency having a substantial interest in the determination of the request." 5 U.S.C. § 552(a)(6)(B)(iii)(III). In line with that provision, an agency may refer documents to an originating agency, but if the "net effect [of the referral] is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them," the referral is deemed improper withholding, unless the agency has a reasonable explanation for its procedure. *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983), *vacated in part on other grounds*, 711 F.2d 1076 (1983).

The referrals to the Executive Office do not constitute improper withholding. According to the MaGaw Declaration, the Secret Service made an initial referral of six pages one year after McAtee's request and a second referral

of 25 pages 17 months after her request because the documents contained information originating within a United States Attorney's Office, specifically communications of the prosecutor. (Doc. 16 at ¶¶ 34–36.) A review of the pages referred shows that they are emails to or from the United States Attorney's Office as well as Secret Service Investigative Reports that contain details of the investigation and judicial actions taken in the case against McAtee. (Doc. 29-1 at 13, 16, 18–33, 44, 46–48, 50, 53, 55–56, 65, 71, 73, 76, 78, 83.) The Secret Service informed McAtee of both referrals, notified the Executive Office and forwarded the documents to that agency, and continued to inquire into the progress made on the referrals. (Doc. 16 at ¶¶ 34–36.) This procedure did not require McAtee to submit a separate request to the Executive Office, and the Executive Office was in the best position to determine whether the documents should be withheld under Exemption 5 (which covers deliberative process, attorney-client privilege, and attorney work-product privilege) or any other exemption. McAtee has now received a complete, albeit belated, response from the Executive Office. (Docs. 32-1; 33-1.) Aside from the delay that the referral caused—now a moot issue—the Secret Service's referral procedure is in line with the recommended procedure for processing documents originating with other agencies. *McGehee*, 697 F.2d at 1111–12.

Nevertheless, McAtee is now faced with a response from the Executive Office in which that agency is withholding 29 pages in full under numerous exemptions. (Docs. 32-1; 33-1.) In its Status Report on the referrals, the Secret Service did not attach the documents or the explanations of the Executive Office because "it is unknown if [McAtee] will file an administrative review of the . . . response." (Doc. 33 at 2.) At this time, the Court is without sufficient information to analyze the applicability of the claimed exemptions and make a segragability determination as to the 29 pages.[3] Additionally, the Court cannot review the response until after McAtee has exhausted the appeals process as to the Executive Office's response. 5 U.S.C. § 552(a)(6)(A); *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 64 (D.C. Cir. 1990). Because the propriety of the 29 withheld pages is not properly before the Court on the current motions, the parties shall file a joint stipulation addressing the status of and proposed resolution for those pages.

## II. FOIA Exemptions

Agencies must make information available to the public unless the information falls within one of the nine enumerated exemptions set forth in the statute. 5 U.S.C. § 552(b). Exemptions must be narrowly construed. *Shannahan*

---

[3] For this reason, the Court is also not in a position to address McAtee's argument that Exemption 5 does not apply to the pages referred to the Executive Office.

*v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012). "FOIA's strong presumption in favor of disclosure places the burden on the government to show that an exemption properly applies to the records it seeks to withhold." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir. 2015). The agency may carry that burden by submitting affidavits and *Vaughn* indices, which are accorded substantial weight if they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemptions, and show that the justifications are not controverted by contrary evidence in the record or by evidence of [agency] bad faith." *Id.* at 769 (quoting *Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992)). "[T]he government must provide tailored reasons in response to a FOIA request. It may not respond with boilerplate or conclusory statements." *Shannahan*, 672 F.3d at 1148.

### A. Exemption under 5 U.S.C. § 552(b)(3)

Exemption 3 allows for withholding documents "specifically exempted from disclosure by statute . . ., if that statute . . . (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3). The Federal Rules of Criminal Procedure, in turn, prohibit disclosure of "a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2). "Rule 6(e) applies if the disclosed material would tend to reveal some secret aspect of the

grand jury's investigation including the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, or the deliberations or questions of jurors." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1100 (D.C. Cir. 2014) (quoting *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) (internal quotation marks omitted)). "The [agency] bears the burden of demonstrating some nexus between disclosure and revelation of a protected aspect of the grand jury's investigation." *Id.* (internal quotation marks omitted). "There is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers." *Id.* (internal quotation marks and alteration omitted).

According to the Magaw Declaration, the Secret Service withheld and redacted pages under Exemption 3 "as information that was obtained pursuant to a Grand Jury investigation into plaintiff, or information pertaining to how that Grand Jury investigation proceeded. This information includes Grand Jury subpoenas, and the documents obtained via those subpoenas; names of individuals subpoenaed in the Grand Jury investigation; and notes of the proceedings of the Grand Jury investigation." (Doc. 16 at ¶ 42.) Yet, the *Vaughn* Index does not provide any detailed information as to each withheld or redacted page. Instead, the Index repeats for every page the same statements that the page contains

"[i]nformation regarding proceeding and investigation of grand jury," (Doc. 16-14 at 16, 18, 20–22, 38–49), or is a "[d]ocument obtained from the grand jury proceeding and investigation," (Doc. 16-14 at 27, 34). These conclusory and boilerplate explanations are insufficient. *Citizens for Responsibility & Ethics in Wash.*, 746 F.3d at 1101. Although some of the requested records may fall under Exemption 3, the Secret Service has not yet supplied sufficient information for the Court to make that determination. Thus, the Secret Service shall submit a supplemental *Vaughn* index with sufficient detail as to the pages withheld or redacted under Exemption 3.

### B. Exemptions under 5 U.S.C. § 552(b)(6) and (b)(7)(C)

Exemption 6, the personal privacy exemption, allows for withholding "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C), the law enforcement personal privacy exemption, allows for withholding "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Both exemptions protect the names and identifying information of government

employees as well as private third parties whose identities are revealed in government and law enforcement records. *Bangoura v. U.S. Dep't of Army*, 607 F. Supp. 2d 134, 147 (D.D.C. 2009). Both exemptions balance individuals' privacy interests in protecting information from disclosure against the public interest in disclosure. *Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1024 n.2 (9th Cir. 2008). Exemption 7(C) is "more protective of privacy" than Exemption 6 when it comes to balancing the "magnitude of the public interest" required to override the respective privacy interests. *Id.* (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 n.6 (1994)).

McAtee specifically seeks the names of employees of Whitefish Credit Union and its counsel, Morrison & Frampton, PLLP, documents provided to the Secret Service by those entities, and correspondence and communications between the Secret Service and those entities.[4] (Doc. 24 at 5.) According to the Magaw Declaration, the Secret Service redacted the names and personal identifying information of third parties and justified its redactions as follows:

> [T]he Secret Service balanced the public's interest in disclosure against the rights of these third parties to personal privacy, and determined that

---

[4] Although the Secret Service also redacted the names and personal identifying information of its agents, the names and personal identifying information of private citizens appearing in mortgage-related documents, and account information for a criminal record database, McAtee does not contest the propriety of those redactions. (*See* Doc. 24 at 3–7; 26 at 9–12; 32 at 8–12.)

the privacy rights of third parties outweighed any public interest in disclosure. The Secret Service determined that there is no public interest in the disclosure of third party names and identifying information, because such information reveals nothing about the manner in which the agency conducts its activities and does not disclose any illegal activity on the part of the agency. The Secret Service considered the potentially stigmatizing effect resulting from the appearance of third party names in law enforcement files. The Secret Service also recognized that disclosure of third party information might have the effect of chilling future cooperation by third parties with law enforcement agencies. The Secret Service is also particularly concerned with the protection of personal information of third parties because the agency's investigative mission includes jurisdiction over identity crimes and fraud.

(Doc. 16 at ¶ 50.) The Secret Service did not withhold any pages in full under Exemptions 6 and 7(C), and it redacted the names and identifying information of third parties without redacting the substance of the documents, including any correspondence or communications. (*See generally* Doc. 29-1.) McAtee does not allege that the Secret Service's search was incomplete, and she does not cite any particular pages where the redactions withhold the substantive information she seeks. The only issue therefore is whether the Secret Service properly redacted employee names under Exemptions 6 and 7(C). The Court concludes it did.

First, McAtee argues the redactions are improper because the individual employees do not have privacy interests as they were working in the course and scope of employment for private entities that cannot enjoy "personal privacy" as

protected under the exemptions. McAtee relies on *Federal Communications Commission v. AT&T, Inc.*, 562 U.S. 397 (2011), but in that case the Supreme Court addressed whether corporations have "personal privacy" for the purposes of Exemption 7(C) without addressing the privacy interests of employees. *Id.* at 400. McAtee provides no other authority establishing that employees of corporations do not have "personal privacy" themselves, and there is no legal reason to adopt her theory.

Next, McAtee argues the Secret Service failed to identify the specific personal privacy interests of these individuals. Yet, the Magaw Declaration plainly identifies the stigma of being associated with an investigation and reasons that the public interest is diminished because names and identifying information reveal nothing about the conduct of the agency. (Doc. 16 at ¶ 50.) Courts have repeatedly found that these considerations weigh in favor of nondisclosure because the privacy interest of individuals mentioned in law enforcement records is accorded great weight while the public interest in the disclosure of third-party identifying information is minimal as disclosure does not inform citizens about "what their government is up to." *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 772 (1989)); *accord Forest Serv. Emps. for*

*Envtl. Ethics*, 524 F.3d at 1025 ("information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct is not the type of information to which FOIA permits access" (internal quotation marks omitted)).

Finally, McAtee does not allege misconduct on the part of the Secret Service. Rather she seeks the contents of the investigative file because she "believes [Whitefish Credit Union] and [Morrison & Frampton] made knowingly false accusations in its civil complaint [against her], and fed these false accusations to the Secret Service and the U.S. Attorney's office to prompt criminal charges against her." (Doc. 24 at 4.) McAtee has filed civil complaints against both entities, and it appears she seeks the requested information to aid in that litigation. (*Id.*) She argues that the Court "should refuse to protect entities who misuse the criminal justice system for monetary gain." (*Id.* at 7.) The requester's reason for seeking the information, however, is irrelevant to the Court's analysis. *Forest Serv. Emps. for Envtl. Ethics*, 524 F.3d at 1025. In any event, "the public interest sought to be advanced [must be] a significant one," *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004), and private litigation is not a significant public interest warranting disclosure of private information, *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir. 1981). "FOIA was *not* intended to function as a

private discovery tool." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

III. **Segregation**

The Secret Service must establish that all reasonably segregable portions of withheld documents have been segregated and disclosed. *Hamdan*, 797 F.3d at 779. The Court is not yet in a position to make a segregability determination as to both the documents withheld by the Executive Office and the documents withheld and redacted under Exemption 3. As to the documents redacted under Exemptions 6 and 7(C), a review of the pages shows that all reasonably segregable portions were disclosed, and only those portions that are exempt—identifying information and not substantive information—was redacted. (*See generally* Doc. 29-1; Doc. 16 at ¶¶ 56–57.)

Accordingly, IT IS ORDERED that the Secret Service's motion (Doc. 19) is GRANTED IN PART. It is granted to the extent that the Secret Service conducted a reasonable search and properly redacted information under Exemptions 6 and 7(C). The Court RESERVES ruling on the motion as to Exemption 3.

IT IS FURTHER ORDERED that McAtee's motion (Doc. 23) is DENIED IN PART. It is denied to the extent that the referral of pages to the Executive Office does not constitute improper withholding and the Secret Service properly

redacted information under Exemptions 6 and 7(C). The Court RESERVES ruling on the motion as to Exemption 3.

IT IS FURTHER ORDERED that the Secret Service shall file a supplemental *Vaughn* index as to the pages redacted and withheld under Exemption 3 within thirty (30) days of this Order.

IT IS FURTHER ORDERED that within thirty (30) days of this Order, the parties shall file a joint stipulation as to the 29 pages withheld by the Executive Office that informs the Court of the status of McAtee's appeal, if any, and proposes a supplemental briefing schedule or other resolution as to the pages. If appropriate, the Secret Service should consider whether it should submit affidavits from the Executive Office explaining the cited exemptions or whether the Executive Office should appear as a party to this suit pursuant to Federal Rule of Civil Procedure 19(a). *See McGehee*, 697 F.2d at 1112.

DATED this 31st day of May, 2016.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT